COMMITTEE TO SAVE
WEAM, Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee,

Viacom Broadcasting, Inc., Intervenor.

No. 85–1352.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 7, 1986.

Decided Dec. 30, 1986.

Barbara M. Simons, with whom Morton L. Simons, Washington, D.C., was on brief, for appellant.

Sue Ann Preskill, Counsel, Federal Communications Commission, with whom Jack D. Smith, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, Federal Communications Commission, Washington, D.C., were on brief, for appellee.

George H. Shapiro and Gerald E. Oberst, Washington, D.C., entered appearances for intervenor.

Before RUTH B. GINSBURG, BORK, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The Committee to Save WEAM raises a substantive and a procedural challenge to the Federal Communications Commission ("FCC" or "Commission") order approving the assignment of Radio Station WEAM's station license. This assignment was initially approved by the FCC's Mass Media Bureau ("Bureau"), acting by authority delegated from the Commission pursuant to section 5 of the Communications Act of 1934, 47 U.S.C. § 155(c) (1982). Appellant filed a timely application for Commission review of the Bureau's approval; nevertheless, under Commission rules, the Bureau's decision was effective upon issuance. The assignment was consummated soon thereafter.

On this appeal, appellant challenges the adequacy of the finding as to the "public interest, convenience, and necessity" upon which the Commission approved the assignment. Appellant also challenges the Commission rule whereby the Bureau's approval was immediately effective despite appellant's application for Commission review.

For the reasons given below, we conclude the Commission's public interest finding was in accordance with controlling statutory provisions, and neither arbitrary, capricious, nor an abuse of discretion. Appellant's substantive challenge must therefore

fail. We also conclude that as the Commission's rule represents a permissible construction of its organic statute, it is entitled to deference. Thus appellant's procedural challenge must also fail.

## I. BACKGROUND

Radio Station WEAM ("WEAM") had broadcast "big band" programming in the Washington metropolitan area since 1980. In 1983, WEAM's owner contracted to assign the station license to Cardinal Broadcasting Associates, which intended to switch the station to a "progressive rock" format. In May of 1983, the owner of WEAM applied for FCC approval of the assignment.

Appellant, a group of WEAM listeners organized to preserve the station's big band format, objected to the assignment and filed a petition to deny. In October 1983, however, the Bureau denied appellant's petition and authorized the assignment. Appellant sought FCC review of the Bureau's authorization, but before the Commission took any action, Cardinal and WEAM's owner rescinded the proposed assignment.

Thereafter, WEAM's owner sought another buyer/assignee. Appellant alleges, however, that the owner blamed appellant for the frustration of the earlier assignment and, out of vindictiveness, refused to accept bids from prospective purchasers interested in preserving the existing format. In February 1984, the owner contracted to assign the station license to Viacom Broadcasting, Inc. ("Viacom") and on March 23, 1984, filed a second application seeking FCC approval. As Viacom proposed to convert the station's programming to "country music," appellant objected to this second assignment and again, on May 3, 1984, filed a petition to deny.

In an unreported letter-order dated July 19, 1984 ("letter-order"), *printed in* Parties' Joint Appendix ("J.A.") at 104, the Bureau addressed each of the objections raised by appellant. The Bureau found, pursuant to 47 U.S.C. § 309(d)(2) (1982), that appellant's petition to deny had failed to "raise any substantial or material question of fact which would warrant designating the WEAM application for hearing." Letter-order at 4, J.A. at 107. The Bureau then denied appellant's petition and, without further explanation, declared that "upon finding that the public interest will be served thereby, the application to assign WEAM from WEAM Radio, Inc. to Viacom Broadcasting, Inc. has been granted...." *Id.*

Under 47 U.S.C. § 155(c)(3), Bureau orders "shall have the same force and effect" as those of the Commission "unless reviewed as provided in paragraph (4) of this subsection." * Appellant argues that if Commission review of a Bureau decision has been sought, the decision cannot be effective until the review has been completed. The Commission rule applicable to the "nonhearing" Bureau decision here at issue provides, however, that a Bureau order becomes "effective upon release" unless the Commission, in its discretion, "stay[s] the effect of ... such action until its review of the matters at issue has been completed." 47 C.F.R. § 1.102(b) (1985).

Relying upon the "effective upon release" provision in the regulations, WEAM and Viacom arranged to carry out the assignment on August 1, 1984. On July 27, 1984, appellant filed a motion with the Commission to stay the effectiveness of the Bureau's decision pending the Commission's review of an administrative appeal then in preparation. J.A. at 108. This motion was denied on August 21, 1984. J.A. at 136.

In a further attempt to delay the assignment, appellant petitioned this court, on July 31, 1984, for review of the letter-order. On October 16, 1984, however, we dismissed appellant's petition, noting that until it had appealed the Bureau's letter-order

---

* Section 155(c)(4) allows parties aggrieved by a Bureau decision to apply for Commission review. Under 47 C.F.R. § 1.115(d) (1985), appel-

lant had 30 days from the letter-order's July 19th release date to apply for such review.

to the Commission, appellant had failed to exhaust its administrative remedies as required by 47 U.S.C. § 155(c)(7). *Committee to Save WEAM v. FCC*, No. 84–1374 (D.C.Cir. Oct. 16, 1984).

In the meantime, Viacom assumed control of WEAM on August 1, 1984 as planned; and on August 17, 1984, appellant filed a timely application for Commission review of the Bureau's decision. Nine months later, on May 15, 1985, the Commission issued a Memorandum Opinion and Order affirming the Bureau's letter-order. *WEAM Radio, Inc.*, 58 Rad.Reg.2d (P & F) 141 (1985) ("May 15 Order"), J.A. at 168. In doing so, the Commission found, without further analysis of its own, that the letter-order "provided an articulated rationale for its conclusion that the public interest would be served by a grant of the application...." *Id.* at 143, J.A. at 171.

Appellant argues that the public interest finding made by the Bureau and essentially adopted by the Commission is unsupported by any articulated rationale and is therefore inadequate. Appellant also contends that the Commission violated statutory law by allowing the assignment to be carried out on the strength of the Bureau's approval in the face of appellant's objection to the transfer and timely application for Commission review of the Bureau's decision.

## II. Discussion

### A. *The Bureau's Public Interest Finding*

A radio station license may be assigned only "upon [a] finding by the Commission that the public interest, convenience, and necessity will be served thereby." 47 U.S.C. § 310(d) (1982). The statute does not define the criteria by which the FCC is to judge the public interest. While the Supreme Court has declared that "the goal of the Act is 'to secure the maximum benefits of radio to all the people of the United States,'" *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 594, 101 S.Ct. 1266, 1274, 67 L.Ed.2d 521 (1981) (citation omitted), the Court has "emphasized that Congress has granted the Commission broad discretion in determining how that goal could best be

achieved" so long as its understanding of the public interest " 'is based on consideration of permissible factors and is otherwise reasonable.' " *Id.*

Although the Commission may select the factors to be considered in finding the public interest, it must "articulate with reasonable clarity its reasons for decision," *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971), so that a court may ensure that the public interest finding results from "reasoned decisionmaking," *Committee for Community Access v. FCC*, 737 F.2d 74, 77 (D.C.Cir.1984).

Appellant contends that the Commission has failed to meet its statutory responsibilities on two counts: first, its reliance on free-market forces to protect program diversity was impermissible in the instant case; and second, it failed to provide a "legally sustainable rationale" for its finding that the public interest would be served by the proposed assignment. We address these contentions in sequence.

### 1. Assurance of Format Diversity

The diversity of the program formats available to the listening public was long considered a key element of the public interest it was the FCC's duty to protect. *See, e.g., Citizens Committee to Preserve the Voice of Arts in Atlanta v. FCC*, 436 F.2d 263, 269 (D.C.Cir.1970). In a policy statement issued in 1976, *Memorandum Opinion and Order*, 60 F.C.C.2d 858 (1976), *recon. denied*, 66 F.C.C.2d 78 (1977) ("Policy Statement"), the Commission concluded that the public's interest in diversity would be better served through a reliance on market forces than on a case-by-case examination of proposed changes in programming by FCC staff. On the basis of its extended review of the matter, the Commission concluded that the competitive market, as a mechanism for allocating entertainment formats, "will produce program diversity of a sort, and in a form, that equates both to the welfare of radio

listeners and to the public interest generally." 60 F.C.C.2d at 861. The Commission therefore determined that it would thenceforth not inquire into whether proposed changes in entertainment formats were in the public interest, but would defer to market mechanisms "as the best available means of producing the diversity to which the public is entitled." *Id.* at 863.

In *WNCN Listeners Guild v. FCC,* 610 F.2d 838 (D.C.Cir.1979), this court held that the Policy Statement violated the Commission's statutory mandate, and that the "public interest" standard required the FCC in some circumstances to make specific findings as to whether changes in entertainment format were in the public interest. The Supreme Court, however, reversed. *FCC v. WNCN Listeners Guild,* 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981).

In *WNCN Listeners Guild,* the Court emphasized the Commission's broad discretion in selecting the criteria for determining the public interest, *id.* at 594, 101 S.Ct. at 1274, and held that the Commission's Policy Statement provided a rational explanation for its conclusion that the public interest in format diversity is best pursued by deferring to the market. *Id.* at 595. The Court cautioned that "the Commission should be alert to the consequences of its policies and should stand ready to alter its rule if necessary to serve the public interest more fully," *id.* at 603, 101 S.Ct. at 1278 but stated that if "time and changing circumstances" necessitate a change in policy, then "it must be assumed that the Commission will act in accordance with its statutory obligations." *Id.* (quoting *National Broadcasting Co. v. United States,* 319 U.S. 190, 225, 63 S.Ct. 997, 1013, 87 L.Ed. 1344 (1943)). The Court also noted that in deciding how the public interest shall be determined, a reviewing court "is not empowered to substitute its judgment for that of the agency." *Id.* at 594 n. 30, 101 S.Ct. at 1274 n. 30 (citations omitted).

Appellant contends that the Supreme Court's approval of the FCC's Policy Statement in *FCC v. WNCN Listeners Guild* is inapplicable to the instant case. It argues that the refusal by the owner of WEAM to accept bids from prospective purchasers interested in maintaining the big band format created a distortion of the normal market allocation mechanism; thus the assumption upon which the Policy Statement is based—that the market will function to protect the public interest in format diversity—is here untenable.

■ Appellant's argument is based, however, on an impractical insistence on an ideal competitive market. The failure or refusal of a seller to deal with particular buyers can be characterized as a market "distortion" only if one insists on a perfectly functioning market. Yet market imperfections were explicitly anticipated both by the Commission in its Policy Statement, 60 F.C.C.2d at 863, ¶ 16, and by the Supreme Court in approving that statement. 450 U.S. at 601, 101 S.Ct. at 1277. We hold that the refusal by the owner of WEAM to accept bids from appellant's members is not a sufficient distortion of the market to undermine the Commission's assumption that the public interest in format diversity is in the long run best pursued by deferring to the admittedly imperfect market. This is certainly not the sort of change in circumstances alluded to by the Supreme Court, *id.* at 603, 101 S.Ct. at 1278, that might necessitate a rethinking of the Policy Statement.

■ In *FCC v. WNCN Listeners Guild,* the Supreme Court noted that in deciding to defer to market forces,

the Commission has not forsaken its obligation to pursue the public interest. On the contrary, it has assessed the benefits and the harm likely to flow from Government review of entertainment programming, and on balance has concluded that its statutory duties are best fulfilled by not attempting to oversee format changes.

450 U.S. at 595, 101 S.Ct. 1274. In light of this endorsement of the FCC's approach to the question of diversity, and in the absence of persuasive evidence suggesting that the rationale of the Policy Statement

is not applicable to the market within which the station operates, we hold that the Commission is not obliged to restate its rationale for deferring to the market each time it approves the transfer of a license. The Policy Statement itself represents a sufficient articulation of the FCC's reasoning, and we will not require a ritualistic reiteration every time the Commission approves an assignment.

2. Articulation of Commission Reasoning in Reaching Its Public Interest Determination

A radio station license may only be assigned "upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby." Furthermore, "such application shall be disposed of as if the proposed transferee or assignee were making application under section 308 for the permit or license in question." 47 U.S.C. § 310(d) (1982). Although not defining what constitutes the public interest, convenience, and necessity, section 308 does suggest their scope by providing that applications for licenses "shall set forth such facts as the Commission by regulation may prescribe as to the citizenship, character, and financial, technical, and other qualifications of the applicant to operate the station; ... the purpose for which the station is to be used; and such other information as it may require." 47 U.S.C. § 308(d).

Over the years, the FCC has developed a form on which it solicits the information it requires in order to discharge its statutory responsibilities. Specifically, the parties who propose to assign a broadcast station license pursuant to section 310(d) must apply for FCC approval on FCC Form 314, *Application for Consent to Assignment of Broadcast Station Construction Permit or License.* 47 C.F.R. § 73.3540 (1985). On this form, a proposed assignee must disclose its corporate structure, any alien control, adverse decisions against it in various judicial and administrative proceedings, other media interests held by it or any other party to the assignment, as well as other information the Commission consid-

ers relevant in determining whether the proposed assignment will serve the public interest, convenience, and necessity.

■ As we have pointed out, the actual criteria to be applied by the FCC in determining whether a particular assignment is in the public interest lies within its very broad discretion. While we have held that it must "articulate with reasonable clarity its reasons for decision," *Greater Boston Television Corp. v. FCC,* 444 F.2d at 851, it is not essential that its reasoning be set forth in its final order. "[I]f the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference." *Environmental Defense Fund v. EPA,* 465 F.2d 528, 537 (D.C.Cir. 1972) (footnote omitted). In the instant case, the application form itself—in conjunction with the FCC's consent to the assignment—and the Bureau's discussion of the specific issues raised in appellant's petition to deny together provide a sufficient articulation of the grounds for the Commission's decision.

By requiring a proposed assignee to address the relevant facets of the public interest, convenience, and necessity on FCC Form 314, the Commission has incorporated the consideration of these issues into its application process. Therefore, the FCC's approval of WEAM's application implies a finding on ample information that the public interest will be served by the assignment.

In the instant case, the FCC record reveals the Bureau's detailed discussion not only of the format diversity issue raised in appellant's petition to deny, letter-order at 2–3, J.A. at 105–06, but also of its charge that Viacom was disqualified to receive the license because of antitrust and discrimination charges that had been filed against it and its affiliates, letter-order at 3–4, J.A. at 106–07.

Given the information solicited by the FCC on FCC Form 314, and given the Bureau's detailed findings on issues specifical-

ly raised in appellant's petition to deny, we hold the Commission's May 15 Order, in which it makes specific reference to the Bureau's letter-order, to be a sufficient articulation of the FCC's finding that the assignment is in the public interest. We will not require the Commission to engage in a formalistic recitation of the specific findings implicit in its ratification of its Bureau's analysis.

**B.** *Effectiveness of the Bureau's Letter-Order Pending Commission Review*

A Commission rule, which has been in effect since 1962, provides (at 47 C.F.R. § 1.102(b)) that unless the Bureau specifies otherwise, its orders are to be effective upon release. Subsection 1.102(b)(3) provides that an application for Commission review will not preclude their taking effect unless the Commission, "in its discretion," decides to stay the effectiveness of a Bureau's order pending completion of its review.

Appellant contends that this rule violates the relevant provisions of the Act. Thus we are presented with a dispute over an agency's interpretation of its organic statute of the kind addressed in *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In that case, the Supreme Court held that if a court, "employing traditional tools of statutory construction," *id.* at 843 n. 9, 104 S.Ct. at 2782 n. 9, determines that Congress left the statute "silent or ambiguous with respect to" a particular issue and simply failed to "directly address[ ] the precise question at issue," the court must defer to the agency's construction of the statute if it is reasonable. *Id.* at 843, 104 S.Ct. at 2781.

Title 47 U.S.C. § 155(c)(3) (1982) provides that any Bureau

> order, decision, report or action ..., unless reviewed [by the Commission] as provided in paragraph (4) of this subsection, shall have the same force and effect, and shall be made, evidenced, and enforced in the same manner, as orders ... of the Commission.

Paragraph (4) of the subsection requires that the Commission "pass upon" any petition for review that is timely filed by "any person aggrieved by any such order."

Appellant argues that as it had filed a timely application for review which the Commission was required by paragraph (4) to pass upon, the Bureau order could not become effective under the terms of paragraph (3) until after the Commission review had been completed. While I believe appellant has the better part of the linguistic argument, the other members of the panel find the statutory language ambiguous and see nothing in the statute or its legislative history to preclude the transfer of the license pending final action by the Commission. The panel majority conclude that the Commission's rule represents "a permissible construction of the statute," *Chevron,* 467 U.S. at 866, 104 S.Ct. at 2793, and see no reason to set aside a practice that has been in effect for more than a quarter of a century.

■ The full panel notes that although WEAM and Viacom were able to consummate the assignment of the station license on the strength of the Bureau's letter-order, they did so with full knowledge of the risk that the Commission might reverse the Bureau's decision and order the assignment rescinded. Thus, the "effective but not final" procedure did not deprive appellant of the opportunity to challenge the assignment before the Commission and this court. Rather, the procedure merely prevented appellant from insisting on the maintenance of the status quo pending review.

### III. CONCLUSION

The FCC based its public interest finding in this case upon a consideration of permissible factors, and the Commission was under no obligation to make findings as to the impact on format diversity on a case-by-case basis. In addition, the Commission provided sufficiently articulated reasoning to support its conclusion. Thus appellant's attack on the adequacy of the public interest finding upon which the FCC approved

the assignment of WEAM's station license must fail.

For these reasons, the Commission's Opinion and Order challenged on this appeal is

*Affirmed.*