OFFICE OF COMMUNICATION
OF THE UNITED CHURCH OF
CHRIST, et al., Appellants,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee,

Fox Television Stations, Inc.,
Intervenor for Appellee.

No. 01–1374.

United States Court of Appeals,
District of Columbia Circuit.

Filed: Nov. 8, 2002.

Before EDWARDS, RANDOLPH, and TATEL,* Circuit Judges.

## JUDGMENT

PER CURIAM.

This cause came to be heard on appeal from an order of the Federal Communications Commission and was briefed and argued by counsel. It is

*ORDERED AND ADJUDGED* that the Order of the Federal Communications Commission ("FCC") is hereby affirmed. Appellants United Church of Christ, *et al.* appeal from *In the Matter of UTV of San Francisco, Inc. and Fox Television Stations, Inc.,* Memorandum Opinion and Order, 16 F.C.C.R. 14,975, 2001 WL 838744 (2001) (*"Order"*), which (1) approved an application submitted by Fox Television Stations, Inc. to acquire the licenses and assets of ten television stations owned by Chris–Craft Industries, Inc. and its subsidiaries, and (2) granted Fox a two-year waiver of

* Judge Tatel's concurrence in the judgment is    attached.

the Newspaper/Broadcast Cross–Ownership Rule, 47 C.F.R. § 73.3555(d). Appellants' claims find no merit in the record before the court. Accordingly, the Order of the FCC is hereby affirmed.

The appellants have presented no viable claim for an evidentiary hearing. The court's scope of review for contentions that the FCC acted unlawfully in failing to designate an application for an evidentiary hearing is quite narrow, as "Congress intended to vest in the FCC a large discretion to avoid time-consuming hearings whenever possible." *Southwestern Operating Co. v. FCC,* 351 F.2d 834, 835 (D.C.Cir.1965). The appellants have failed to show that the FCC erred in deciding this case without an evidentiary hearing.

■ Under 47 U.S.C. § 309(d)(2), the FCC was required to find "public interest" justifications for Fox's acquisition application and the waiver that was granted to Fox. The appellants claim that the FCC failed to offer any "public interest" justifications in its consideration of this case. We reject this claim.

This court's decision in *Committee to Save WEAM v. FCC,* 808 F.2d 113 (D.C.Cir.1986), is dispositive of the first claim relating to the acquisition application. In *WEAM,* we held that the public interest inquiry is subsumed by the application process:

> By requiring a proposed assignee to address the relevant facets of the public interest, convenience and necessity on FCC Form 314, the Commission has incorporated the consideration of these issues into its application process. Therefore, the FCC's approval of [an] application implies a finding on ample information that the public interest will be served by the assignment.

*Id.* at 118. The FCC Form 314 was used in this case. Although Fox could not fully complete Form 314 because it required waivers, to the extent that Fox required these waivers, the Commission found that granting temporary waivers would serve the public interest, and, therefore, the acquisition was in the public interest. Accordingly, *WEAM* dictates a conclusion that there was a sufficient public interest showing for Fox's application.

■ As to the second claim, the FCC articulated, with reasonable clarity, the public interest justifications for the waiver. The agency found that "[a] temporary loss of diversity, if any, in the New York market during this period will be outweighed by the benefits of permitting an orderly sale to a qualified buyer committed to preserving the [*New York*] *Post* as a media voice." *Order,* 16 F.C.C.R. at 14,989 ¶ 45. This explanation is supported in the record and entirely reasonable. Moreover, the FCC acted well within its discretion in setting the waiver period at 24 months. As this court has previously stated, "in determining whether a 6, 12, or 24 month period is appropriate the Commission is engaged in classic 'line-drawing,' making judgments to which this court must generally defer. We will not disturb the Commission's determination that 24 months was an appropriate period, in the absence of evidence as to why a shorter period would have achieved the same goals sought by the Commission in granting the waiver." *Health & Med. Policy Research Group v. FCC,* 807 F.2d 1038, 1045–46 n. 10 (D.C.Cir.1986) (citations omitted). Appellants have presented no such evidence.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

TATEL, Circuit Judge, concurring.

I agree that *Committee to Save WEAM v. FCC,* 808 F.2d 113 (D.C.Cir.1986), controls this case, but I write separately to point out the peculiar result this produces. By relying on nothing more than (1) FCC Form 314, which is little more than a checklist on which a proposed license assignee attests that the proposed assignment complies with the Communications Act and Commission regulations, and (2) Fox's eligibility for a waiver from the applicable rules, the Commission has converted what it has often interpreted as an obligation to find "affirmative public interest benefits," *e.g., Qwest Communications Int'l,* 15 F.C.C.R. 5376, 5381–82 ¶ 10, 2000 WL 263685 (2000), into a rule that it will acquiesce in a license acquisition so long as the acquisition (eventually) does no harm. In this case, for example, by relying exclusively on Fox's representations regarding the cross-ownership rule on Form 314, the Commission has simply ensured that Fox's ownership of two television broadcast stations and a daily newspaper in the New York market will neither reduce diversity nor increase concentration. This does nothing to ensure that the transaction will *affirmatively* benefit the public–a fact that the Commission's Mass Media Bureau seemed to recognize when it asked Fox to supplement its Form 314 application with information on how the proposed transaction would produce "transaction-specific efficiencies that can demonstrably lead to consumer benefits, productivity enhancements that will flow through to consumers, and improved incentives for innovation that can lead to foreseeable benefits to consumers."

Of course, given the Commission's "broad discretion" to determine what is in the public interest, *FCC v. WNCN Listeners Guild,* 450 U.S. 582, 594, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981), I suspect that we would defer to a Commission policy under which it approves all qualifying broadcast license acquisitions even if they produce no affirmative benefits. To merit such deference, however, I would have thought that the Commission (as opposed to its general counsel in its appellate brief or the chairman in his concurring opinion) would have to state its policy and explain it. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851 (D.C.Cir.1970) (Commission must "articulate with reasonable clarity its reasons for decision"). But *Committee to Save WEAM*'s holding that approval of a Form 314 license assignment application "implies a finding on ample information that the public interest will be served by the assignment," 808 F.2d at 118, precludes us from asking the Commission to provide such an explanation.